## No. 6381.

### THOMAS O. MAHONEY VS. A. MARTIN ET AL.

Where the terms of a charter party show that the vessel chartered is to carry freight and passengers, and it is shown that either freight or passengers were carried, the charterers will be held commercial partners, and bound *in solido*.

It is not a breach of the warranty of seaworthiness, that the master of the vessel was drunk at the port of delivery whilst the cargo was being discharged, where the duty of discharging devolved on the consignees of the charterers.

APPEAL from the Fifth District Court for the Parish of Orleans. *Cullom, J.*

*J. McConnell* for Plaintiff and Appellee:

Where two persons sign a contract of charter party, by which a vessel is hired to them, for the purpose of "carrying personal property for hire" therein, such contract constitutes the charterers, *quoad* that undertaking, commercial partners. C. C. Art. 2825 (2796) Sec. 3; 4 La. 106; 2 Rob. 182; 1 An. 147; Wilmot vs. Steamer Ouachita Belle, 32 An. p. 611.

*Fred D. King* and *Chas. S. Rice* for Defendants and Appellants:

1. Commercial partnerships are never presumed. Two or more persons, joining in a charter party, are not necessarily commercial partners. Such partnership results, if at all, from the use made of the vessel; that is, the carrying of personal property for hire. If the joint charterers load the vessel with personal property belonging to them, individually or jointly, no such commercial partnership is necessarily created. C. C. 2825.

2. The charter party is one thing; the use of the vessel may be such as to create a commercial partnership or may not. The charter party is no more the obligation of the partner-

ship than the price of the ship would be, when bought jointly by two persons, who afterwards used her so as to make the business so carried on in her that of a commercial partnership. Byrne vs. Hooper, 2 Rob. 232, 233.

3.   The seaworthiness of the ship is a warranty of the sobriety, competency and practical efficiency of the master and crew. A master drunk and inattentive to his duties in port, and ignorant of the seas through which his vessel is chartered to voyage, and of the winds and currents he is likely to encounter, renders the ship unseaworthy. 3 Ware, 173 ; 3 Clifford, 464 ; 3 Kent, (11th ed.) 278 and 279; The Schooner Sarah, 2 Sprague, 32; Parsons on Shipping and Admiralty, Vol 1, p. 171; Abbott on Shipping, (12 ed ) pp. 284, 676 ; Maclachan on Shipping, pp. 381 and 122 ; Parsons on Shipping and Admiralty, Vol 2, p. 3 ; 21 How. 23.

4.   Proof of the usual time employed in making the same voyage, and proof of the actual time employed by several vessels on the same voyage and at the same time, with the one in question, afford a measure of inattention, incompetency and unnecessary delay for which plaintiff is responsible.

The opinion of the Court was delivered by

TODD, J.   The plaintiff, owner of the British schooner *Ellen,* sues defendants on a contract of charter party, for the use of the vessel for two months and four days, at $700 per month, which, with two items of pilotage and passage money, aggregates $1,513.33, subject to a credit of $452, leaving a balance of $1,061.33, for which judgment is asked *in solido.*

The contract was for a voyage from New Orleans to Belize, Honduras and the Bay Islands and return. The charterers engaged " to furnish the said vessel a cargo of lumber and general merchandise, and such return freight as might be offered or the agents of said charterers might provide, and were to pay $700 per month of thirty days, and all expenses, except crew and provisions."

The answer admits the execution of the alleged contract, but resists the payment of the charter money on the grounds: 1, that the vessel was not seaworthy and not properly officered, manned and equipped ; 2, that the management was unskilful, and the voyage delayed unnecessarily for the purpose of augmenting the amount to be claimed under the charter party ; 3, that this delay caused a loss in the cargo of fruit, shipped on the return trip, of $1,000, which sum was pleaded in compensation and reconvention.

There was judgment in favor of the plaintiff for the amount claimed as prayed for, and one of the defendants, Alphonse Martin, has appealed.

There is no doubt that the voyage of the *Ellen* was an unusually long one ; but we think the cause or causes of detention are satisfactorily explained by the testimony, and the delay shown not to have resulted from any fault in the management or condition of the vessel.

The testimony of the master appears in the record accompanied by the admission that the mate of the vessel and three seamen would cor-

roborate his testimony, thus furnishing the testimony of five witnesses to the same facts.

The causes of the delay thus sworn to were, in substance, adverse winds, calms, and detention in taking on ballast, owing to the failure of the charterers to furnish the labor and proper tools for the purpose.

It is also shown that the appellant offered to pay $700 in settlement of the amount called for by the contract, and according to the testimony of plaintiff's agent, at the time of making the offer did not complain of any violation of the contract on the part of the plaintiff, but only that the voyage was an unprofitable one. The defendant, however, in his testimony, says that the offer in question was made by way of compromise, which is denied by the plaintiff's witnesses referred to.

The defendant produces two witnesses, his agents or employees at Balize, who testify that the master of the vessel was drunk during part of the time that the vessel was in that port, and that the discharging of the vessel was delayed in consequence. There is no charge of drunkenness in the answer, nor is such charge mentioned or alluded to in the interrogatories to these witnesses, and this testimony was taken some months after the *Ellen* had permanently left with her officers and crew the port of New Orleans, and no opportunity for rebuttal on this point was afforded the plaintiff.

There is no proof of drunkenness or other misconduct of officers or crew during the time the vessel was at sea, and it was shown that the master was duly sober whilst the vessel was at this port, before and after her voyage. The work of discharging the vessel did not belong to her officers and crew, but to the agents or consignees of the vessel; and conceding that the drunkenness of the master for the time stated and whilst the vessel was in port being discharged, is true, we do not think it establishes a breach of the warranty of *seaworthiness* contained in the contract.

It is next contended by the defendant's counsel that the liability of the defendants was joint and not solidary.

The charter party on its face provides for the carrying by said vessel "of a cargo of lumber and general merchandise and such return freight as may be offered or the agents of said charterers may provide." This lumber and merchandise the evidence shows was destined for two different points, Belize and Ruatan; and in speaking of the portion of the cargo shipped to the latter place, the master of the vessel, in his testimony, refers to the bills of lading as showing what that part of the cargo consisted of. This circumstance of the bills of lading would go to show that the charterers were not the owners of all the goods carried by the vessel, as stated by their counsel, for we cannot perceive why the charterers should furnish bills of lading to themselves, and

why bills of lading should be given unless freight was to be collected on the goods covered by such bills.

Provision is also made in the charter party for the carrying of passengers, as we find from this expression, " and for any passengers that may be carried, one-half of the passage money," etc. And it is shown that at least one passenger was carried, and the passage money makes one item of the plaintiff's account.

We think that these facts and the terms of the charter party constituted the defendants, *quoad* this entire venture and engagement, commercial partners, and rendered them liable *in solido*.

In the case of David vs. Eloi, 4 L. 106, it was said :

" Whether the parties first enter into partnership to carry goods for hire, and then buy a vessel to enable them to do so, or commenced by buying a vessel and then carry goods for hire, they are bound jointly and severally ; " language quite applicable to the facts of this case. See, also, 32 An. 611 ; C. C. 2825.

Judgment affirmed.

### On Application for a Rehearing.

In his application for a rehearing the counsel for defendants complains that we did not attach sufficient weight to the defendants' witnesses, who testified to the unnecessary delays occurring in the voyage, at Belize and the Bay Islands, and charged to the fault of the master of the vessel.

We did consider and fully weigh this evidence, but we could not give it a preponderating weight over the opposing testimony of the captain and crew of the vessel, a larger number of witnesses, having equal opportunity for knowing the facts, and equal claims for credence. This testimony explains satisfactorily the several causes of detention.

Complaint is also made that we did not mention the subject of the alleged ignorance of the master as to the route or the waters over which he was to sail, and that this circumstance did not control or affect our determination of the case.

We did not attach to it the importance claimed for it. If the vessel was seaworthy, if the master was capable and skilful, the fact that he had never made the voyage before, could not be construed as a fault and assigned as the cause of the delays, in the face of evidence to the contrary. It rather seemed to us that the ignorance of the master in this respect was a matter that should have been considered by the defendants before the voyage began, and doubtless was known to them and considered, as it was so easily ascertainable by inquiry, and no concealment is charged.

Rehearing refused.